IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

R. BRADLEY VAN LANINGHAM d/b/a )
BRADLEY LAW GROUP and )
VAN LANINGHAM AND ASSOCIATES, )
PLLC d/b/a BRADLEY LAW GROUP, )
)
            Plaintiffs, )
)
v. ) 1:16CV948
)
ALLIED INSURANCE, a Nationwide )
Insurance Company; AMCO INSURANCE )
COMPANY; DEPOSITORS INSURANCE )
COMPANY; and TRAVELERS CASUALTY )
INSURANCE COMPANY OF AMERICA, )
)
            Defendants. )

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

R. Bradley Van Laningham and Van Laningham and Associates, PLLC (together, "BLG"), a lawyer and his firm, are named defendants in a putative class-action lawsuit currently pending before this Court, *Garey, et al. v. James S. Farrin, P.C., et al.*, No. 1:16-cv-542 (the "underlying action"). The plaintiffs in the underlying action allege that BLG violated the Driver's Privacy Protection Act of 1994, 18 U.S.C. § 2721 *et seq.* ("DPPA"), by obtaining their names and addresses from automobile accident reports and using that information for marketing purposes.[1]

---

[1] The operative complaint in the underlying action was provided as an attachment to the amended motion for summary judgment presently before the Court. (*See* ECF No. 70-1.)

BLG tendered defense of the underlying action to Travelers Casualty Insurance Company of America ("Travelers"), which had issued a pair of general commercial liability policies to BLG between June 2012 and June 2014 (the "Policies").[2] (*See* ECF Nos. 1 ¶¶ 18, 26; 21-6; 21-7.) Travelers has thus far defended BLG, but has done so "[s]ubject to a full reservation of [its] rights, including the right to withdraw defense and to deny any indemnity obligation under the Policies." (ECF No. 21-8 at 1.)

In the instant suit, BLG seeks a formal declaration that Travelers has a duty to defend and, if necessary, indemnify it against the claims in the underlying action.[3] (ECF No. 1 at 10.) Travelers has now moved for summary judgment, arguing that the claims alleged in the underlying action fall outside the Policies' scope of coverage. (*See* ECF No. 70.) The Court agrees and, for the reasons stated below, will grant the motion.

## I. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The role of the court at summary judgment is not "to weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Accordingly, the court must "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

---

[2] Both of the Policies have the same material terms. (*See* ECF Nos. 21-6; 21-7.)

[3] On April 6, 2020, BLG voluntarily dismissed this action as to all other Defendants. (ECF No. 69.)

## II. DISCUSSION

In North Carolina,[4] the interpretation of language in an insurance policy is a question of law for the Court. *Nat'l Quarry Servs., Inc. v. First Mercury Ins. Co.*, 372 F. Supp. 3d 296, 302 (M.D.N.C. 2019) (quoting *N.C. Farm Bureau Mut. Ins. Co. v. Mizell*, 530 S.E.2d 93, 95 (N.C. Ct. App. 2000)). "[T]he object of construing an insurance policy is to arrive at the insurance coverage intended by the parties when the policy was issued." *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 692 S.E.2d 605, 612 (N.C. 2010). Clear and unambiguous language must be enforced as written. *Cont'l Cas. Co. v. Amerisure Ins. Co.*, 886 F.3d 366, 371 (4th Cir. 2018). However, ambiguities are resolved (within reason) against the insurance company. *Id.* Relatedly, provisions extending coverage are viewed liberally, whereas those excluding coverage are construed narrowly. *Harleysville*, 692 S.E.2d at 612. This is in keeping with the "well settled [rule] in North Carolina that insurance policies are construed strictly against insurance companies and in favor of the insured." *See State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 350 S.E.2d 66, 73 (N.C. 1986).

In deciding whether an insurer has a duty to defend, the reviewing court compares the underlying complaint and the relevant policies side-by-side to determine "whether the events as alleged are covered or excluded." *See Harleysville*, 692 S.E.2d at 610. In the course of this analysis, the insured must initially show that the alleged underlying facts arguably fall within

---

[4] As a federal court sitting in diversity, this Court is bound to apply the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co. Inc.*, 313 U.S. 487, 496–97 (1941). North Carolina generally follows the rule of *lex loci contractus*, meaning "the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract." *Fortune Ins. Co. v. Owens*, 526 S.E.2d 463, 466 (N.C. 2000). The applicable Policies were issued in North Carolina. (*See* ECF Nos. 21-6 at 2; 21-7 at 2.) Thus, the Court must interpret them according to North Carolina law.

the policy's coverage. *Kubit v. MAG Mut. Ins. Co.*, 708 S.E.2d 138, 147 (N.C. Ct. App. 2011). Once that burden is met, the onus "shifts to the insurer to prove that a policy exclusion excepts the particular injury from coverage." *Id.* If the insurer is successful, the burden shifts back to the insured to "prov[e] that an exception to the exclusion exists and applies to restore coverage." *See Home Indem. Co. v. Hoechst Celanese Corp.*, 494 S.E.2d 774, 783 (N.C. Ct. App. 1998). Ultimately, "if the insurance policy provides coverage for the facts as alleged," then the insurer has a duty to defend; however, if the allegations are "not within, or [are] excluded from, the coverage provided by the insurance policy," then no such duty arises. *See Harleysville*, 692 S.E.2d at 611.

Unlike the duty to defend, which hinges on the facts *as alleged* in the underlying complaint, the duty to indemnify is ordinarily "measured by the facts [as] ultimately determined at trial." *Id.* at 610. That said, once the court finds that there is no duty to defend, then it must also find that there is no duty to indemnify; if there is no coverage when the alleged facts are accepted as true, there certainly won't be coverage when those same facts become subject to dispute. *See Liberty Corp. Capital, Ltd. v. Delta Pi Chapter of Lambda Chi Alpha*, No. 1:09cv765, 2012 WL 3308371, at *3 (M.D.N.C. Aug. 13, 2012) (quoting *Penn–America Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004)); *see also N.C. Farm Bureau Mut. Ins. Co., Inc. v. Phillips*, 805 S.E.2d 362, 366 (N.C. Ct. App. 2017) ("Because the duty to defend may be broader than the duty to indemnify . . . if it fails, so too does the duty to indemnify.").

The underlying action asserts that BLG unlawfully obtained and used certain "protected personal information"—allegations which, BLG contends, implicate coverage in the Policies for "personal and advertising injury," "bodily injury" and/or "property damage,"

4

as those terms are defined therein. (*See, e.g.*, ECF Nos. 70-1 ¶ 66; 72 at 8–18, 24.) However, even assuming that the underlying action alleges these kinds of harms, an exclusion contained in the Policies—known as the "Unsolicited Communications" exclusion—unambiguously bars coverage.[5] That exclusion states, in relevant part:

> This insurance does not apply to . . .
>
> "Bodily injury" or "property damage" . . . [or] "[p]ersonal injury" or "advertising injury" arising out of any actual or alleged violation of any law that restricts or prohibits the sending, transmitting or distributing of "unsolicited communication" . . .
>
> "Unsolicited communication" means any communication, in any form, that the recipient of such communication did not specifically request to receive.

(*See* ECF No. 21-6 at 31, 65.) The DPPA makes it generally "unlawful for any person knowingly to . . . disclose personal information[ ] from a motor vehicle record." *See* 18 U.S.C. § 2722. By its plain language, then, the DPPA is a statute which, per the exclusion, "restricts or prohibits the sending [or] transmitting" of certain unwanted communications.[6] Because all

---

[5] Travelers also asserts that a second exclusion—the "Knowing Violation of Rights" exclusion—precludes coverage. (ECF No. 71 at 17–18.) However, because, as detailed below, the Court concludes that the Unsolicited Communications exclusion bars coverage under the Policies, it need not determine whether this additional exclusion applies.

[6] As the Supreme Court has explained, the DPPA is meant to address "at least two concerns over the personal information contained in state motor vehicle records." *See Maracich v. Spears*, 570 U.S. 48, 57 (2013). First, the law strives to protect against "stalkers and criminals," who could "acquire personal information from state DMVs" and use it to harass their victims. *Id.* Second, the law aims to curtail the common practice among the States "of selling personal information to businesses engaged in direct marketing and solicitation." *Id.* Both of these animating purposes bolster the Court's conclusion that the Unsolicited Communications exclusion applies: whether from a stalker or a marketer, the DPPA is intended to prevent "unsolicited communications," among other misuses of personal information.

5

of the allegations against BLG in the underlying complaint "arise out of" alleged violations of the DPPA, this exclusion operates as a bar to coverage.

The Western District has twice considered the applicability of comparable exclusions in coverage disputes involving the same or similar underlying actions as in this case. *See Hartford Cas. Ins. Co. v. Gelshenen*, 387 F. Supp. 3d 634, 642 (W.D.N.C. 2019); *Hartford Cas. Ins. Co. v. Greve*, No. 3:17CV183-GCM, 2017 WL 5557669, at *5 (W.D.N.C. Nov. 17, 2017). The exclusions at issue in those cases precluded coverage for injuries stemming from the violation of "[a]ny statute . . . that prohibits or limits the sending, transmitting, or communicating or distribution of material or information." *See, e.g.*, *Greve* 2017 WL 5557669, at *4. In both instances, the court concluded that the exclusions barred coverage because "violations of the DPPA come directly within [their] scope[s]."[7] The same is true here.

BLG argues that the Unsolicited Communications exclusion is inapplicable because the "crux of the issue in the underlying action" is whether the underlying defendants improperly "obtain[ed]" and "use[d]" protected information, (*see* ECF No. 72 at 19–20)—conduct that the DPPA prohibits separately and distinctly from "disclos[ure]," *see* 18 U.S.C. § 2722(a). However, as the Western District rightly observed, the plain language of the Unsolicited Communications exclusion precludes all claims arising out of statutes like the DPPA, "regardless of whether the particular violations at issue constitute improper communication or distribution of information." *See Gelshenen*, 387 F. Supp. 3d at 642.

---

[7] The Fourth Circuit affirmed both decisions on appeal; however, having concluded that separate exclusions barred coverage, it opted not to consider whether the communications exclusions also precluded coverage. *See Hartford Cas. Ins. Co. v. Davis & Gelshenen, LLP*, 801 F. App'x 915, 917 n.* (4th Cir. 2019) (per curiam); *Hartford Cas. Ins. Co. v. Ted A. Greve & Assocs., PA*, 742 F. App'x 738, 741 n.2 (4th Cir. 2018) (per curiam).

6

In short, having compared the pleadings in the underlying action with the Policies, this Court concludes—as the Western District has in nearly identical cases—that Travelers bears no duty to defend or indemnify BLG.

As a final matter, Travelers "respectfully requests that the Court award [it] reimbursement of the attorneys' fees and costs it incurred to date in defending BLG in the [underlying action]." (ECF No. 70 at 4.) Travelers argues that, because it has no duty to defend BLG, it would only be fair to allow it to recoup what it has already paid to defend BLG. (*See* ECF No. 71 at 21–22.) Whatever its intuitive appeal, "Travelers offers no North Carolina authority for [this] proposition," (*see* ECF No. 31 at 21), and the Court has been unable to locate a North Carolina case or statute which would support awarding an insurance company fees for defending its insured subject to a reservation of rights. Accordingly, the Court declines Travelers's request for attorneys' fees and costs.

For these reasons, the Court enters the following:

## ORDER AND DECLARATION

IT IS THEREFORE ORDERED that Travelers's Amended Motion for Summary Judgment, (ECF No. 70), is GRANTED, and the claims against it are DISMISSED WITH PREJUDICE.

Further, it is DECLARED that Travelers has no duty under the Policies to defend or indemnify BLG in connection with the underlying action, *Garey, et al. v. James S. Farrin, P.C., et al.*, No. 1:16-cv-542.

This, the 24th day of June 2020.

/s/Loretta C. Biggs
United States District Judge